## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| SAMARA DALY and LINDA VIRTUE, on behalf of themselves and all others similarly situated,<br><br>                          Plaintiffs,<br><br>v.<br><br>PRET A MANGER, LTD. and JAB HOLDING COMPANY,<br><br>                         Defendants. | Case No. _____<br><br>**<u>COMPLAINT</u>**<br><br>**<u>DEMAND FOR JURY TRIAL</u>** |

## <u>COMPLAINT</u>

On behalf of themselves and all others similarly situated, Plaintiffs SAMARA DALY and LINDA VIRTUE (collectively, "Plaintiffs"), by and through their counsel, bring this action against Defendants Pret A Manger, Ltd. and JAB Holding Company (collectively, "Pret A Manger" or "Defendants") regarding the deceptive labeling, marketing, and sale of certain bread and other baked goods (the "Products," as further defined below) as "Natural Food," despite the fact that the Products contain traces of a synthetic biocide. Plaintiffs allege the following based upon information, belief, and the investigation of their counsel:

### <u>INTRODUCTION</u>

1.  Due to concerns about health, sustainability, and the increasing use of synthetically created chemicals in the production of food, consumers are increasingly considering how their food is grown, processed, and prepared.

2.  As a result, demand has increased for "natural" food products that provide assurances regarding how the they are produced and prepared—that is, products that are free from

unnatural ingredients, synthetic chemicals, or other remnants of artificial or extensive processing. Consumers, as Pret A Manger knows, are willing to pay more for products marketed in this way than they are willing to pay for competing products that do not provide such assurances.

3.       Pret A Manger produces sandwiches, baked goods, and other prepared foods that are sold to consumers through Pret A Manger's retail outlets or restaurants and are advertised and promoted as "Natural Food."

4.       In contrast to Pret A Manger's representations, certain food items sold at its retail outlets contain glyphosate, a synthetic biocide suspected, including by consumers, to have detrimental health effects.

5.       Specifically, the Products at issue (the "Products") are[1]:

(a)       Harvest (Oatmeal Raisin) Cookie; and

(b)       Egg Salad and Arugula Sandwich, and other products made with Pret A Manger's 9-Grain Granary Bread.

6.       In sum, Pret A Manger is deceiving consumers into believing that the Products are "Natural Food" when they are not.

7.       No reasonable consumer who sees Pret A Manger's representations that it sells "Natural Food" would expect the Products to contain traces of an unnatural biocide.

8.       By deceiving consumers about the nature, quality, and/or ingredients of the Products, Pret A Manger is able to sell a greater volume of the Products, to charge higher prices for the Products, and to take away market share from competing products, thereby increasing its own sales and profits.

---

[1] Discovery may demonstrate that additional Pret A Manger food items are within the scope of this Complaint. Plaintiff reserves the right to amend this complaint to include additional food items identified through the course of discovery.

9.	Pret A Manger's false and misleading representations and omissions violate New York's General Business Law §§ 349 and 350 and common law.

10.	Because Pret A Manger's labeling and advertising of the Products tend to mislead and are materially deceptive about the true nature, quality, and ingredients of the Products, Plaintiffs bring this deceptive advertising case on behalf of themselves and similarly situated consumers, and seek relief including an injunction to halt Pret A Manger's false marketing and sale of the Products.

## JURISDICTION AND VENUE

11.	This Court has original subject-matter jurisdiction over this proposed class action pursuant to 28 U.S.C. § 1332(d) explicitly provides for the original jurisdiction of the federal courts in any class action in which any member of the plaintiff class is a citizen of a State and any defendant is a citizen or subject of a foreign state, and the matter in controversy exceeds the sum of $5,000,000.00, exclusive of interest and costs. Plaintiffs are citizens of the State of New York. On information and belief, Defendants Pret a Manger, Ltd. and JAB Holding Company are citizens of foreign states, incorporated in the United Kingdom and Germany, respectively. On information and belief, the amount in controversy exceeds $5,000,000.00.

12.	This Court has personal jurisdiction over the parties in this case. Plaintiffs are citizens of New York and residents of Kings County, New York. Pret A Manger purposefully avails itself of the laws of New York to market its Products to consumers nationwide, including consumers in New York, and distributes its Products to numerous retailers throughout the United States, including New York. Plaintiffs' claims arise directly from Pret A Manger's activities within New York.

13.	Venue is proper in this District under 28 U.S.C. § 1391(a). Substantial acts in

furtherance of the alleged improper conduct, including the dissemination of false and misleading information regarding the nature, quality, and/or ingredients of Pret A Manger's Products, occurred within this District.

## PARTIES

14.    At all times mentioned herein, Defendant Pret A Manger, Ltd. was and is a corporation headquartered in the United Kingdom[2] and Defendant JAB Holding Company was and is a corporation headquartered in Germany. Pret A Manger was, at all relevant times, engaged in commercial transactions throughout the United States and the State of New York.

15.    Pret A Manger manufactures and/or causes the manufacture of the Products, and markets and distributes the Products in retail stores in New York and throughout the United States.

16.    At all times mentioned herein, Plaintiffs were and are individual consumers over the age of 18, citizens of the State of New York, and residents of the County of Kings.

17.    During the class period, Plaintiff Daly purchased Pret A Manger's Egg Salad Sandwich on multiple occasions from Pret A Mangers location in New York, including the location at 100 Church St, New York, NY 10007.

18.    During the class period, Plaintiff Virtue purchased Pret A Manger's Harvest Cookie on multiple occasions from a Pret A Manger location in New York.

19.    In deciding to make his purchase, Plaintiffs saw, relied upon, and reasonably believed Pret A Manger's representations that its Products were "natural."

20.    Plaintiffs were willing to pay more for Pret A Manger's Products because they expected the Products to be free of pesticides and other unnatural chemicals.

## FACTUAL ALLEGATIONS

---

[2] Defendant Pret A Manger, Ltd. was acquired by JAB Holding Company, a German corporation, in May 2018.

21.     Plaintiffs bring this suit for injunctive relief under New York's General Business Law §§ 349 and 350 and common law against Pret A Manger, based on misrepresentations and omissions committed by Pret A Manger regarding the Products, which Pret A Manger markets as "Natural Food."

22.     Pret A Manger's marketing of the Products is false and deceptive because the Products contain glyphosate, a synthetic biocide, the presence of which does not comport with consumers' perceptions of "Natural Food."

23.     Pret A Manger knows that American consumers increasingly and consciously seek out, and will pay more for, "natural" foods.

24.     Accordingly, Pret A Manger cultivates an image of the Products as being natural.

### The Presence of Glyphosate in the Products Renders Pret A Manger's Advertising False and Deceptive.

25.     Pret A Manger represents that the Products are "Natural" by representing itself as a purveyor of "Natural Food" in its retail locations.

26.     Pret A Manger's logo during the class period – which appears throughout retail outlets and was prevalently featured on the company's advertisements, and, including but not limited to, signage, employee uniforms, cups, napkins, product packaging, and takeaway bags – contains the representation that it sells "Natural Food."



27.     In addition to Pret A Manger's logo, prominent signage in its retail outlets states, "Pret creates handmade natural food avoiding obscure chemicals, additives and preservatives common to so much of 'prepared' and 'fast food' on the market today."

28.     Pret A Manger's representations are intended to, and do, portray to consumers that, at the very least, the ingredients in its products do not contain synthetic ingredients or chemicals.

29.     Contrary to the representations made by Pret A Manger, quantitative testing revealed that the Products contain glyphosate, an unnatural biocide.

30.     Tests conducted by an independent laboratory using liquid chromatography mass spectrometry (LCMS) revealed the amount of glyphosate in the Oatmeal Raisin cookie to be between 0.09-0.174 parts-per-million (ppm) and the amount of glyphosate in the 9-Grain Granary Bread to be between 0.199 and .250 ppm.

31.     Glyphosate was invented by the agrochemical and agricultural biotechnology corporation Monsanto, which began marketing the herbicide in 1974 under the trade name Roundup, after DDT was banned.

32.     Glyphosate is derived from the amino acid glycine.

33.     To create glyphosate, one of the hydrogen atoms in glycine is artificially replaced

with a phosphonomethyl group.

34.     Glyphosate is not "natural."

35.     Over the past several years, consumers have become increasingly conscious of the detrimental effects that glyphosate may have on human health.

36.     Reasonable consumers do not expect a synthetic chemical with suspected health concerns to be found in a product marketed as "natural," which makes Pret A Manger's "Natural Food" representation a misrepresentation.

37.     Nowhere on Pret A Manger's website or retail outlets does Pret A Manger mention that glyphosate may be in the Products, a material omission in the marketing of the Products.

**Pret A Manger Has Deceived Consumers
and Is Aware That Its Representations Are False.**

38.     Pret A Manger holds itself out to the public as a trusted expert in the production of "Natural Food."

39.     Pret A Manger knows what representations it makes regarding the Products.

40.     Pret A Manger also knows how the Products are produced, including that glyphosate enters the Products sometime during the production process.

41.     Consumers frequently rely on manufacturers, their reputation, and the information provided on manufacturers' websites in making purchase decisions, especially in purchasing food.

42.     Reasonable consumers lack the information and scientific knowledge necessary to ascertain the true source, quality, and nature of ingredients in the Products.

43.     Reasonable consumers must, and do, rely on Pret A Manger to report honestly what the Products contain and how they are made.

44.     Reasonable consumers are misled and deceived by Pret A Manger's "natural" representations into believing that they are purchasing products that are "Natural," or contain

nothing unnatural.

45.     Pret A Manger made the false, misleading, and deceptive representations and omissions knowing that consumers would rely upon these representations and omissions in purchasing the Products.

46.     In making the false, misleading, and deceptive representations and omissions at issue, Pret A Manger knew and intended for consumers to purchase the Products when consumers might otherwise purchase competing products.

47.     In making the false, misleading, and deceptive representations and omissions at issue, Pret A Manger also knew and intended that consumers would pay more for products that were represented as "Natural Food," furthering Pret A Manger's private interest of increasing sales of its products and decreasing the sales of the truly "Natural" and/or glyphosate-free products that are truthfully marketed by its competitors.

48.     Upon information and belief, Pret A Manger has profited, including from consumers in New York, from its falsely marketed Products and its carefully orchestrated image.

49.     Pret A Manger's conduct in representing the Products as being "Natural Food" deceived and/or is likely to deceive the public.

50.     Consumers cannot discover the true nature of the Products from reading the label or visiting Pret A Manger's website marketing the Products. The Product labels, retail outlets, and Pret A Manger's website do not state anywhere that the Products may contain glyphosate residue.

51.     Discovery of the true nature of the ingredients requires knowledge of chemistry and access to laboratory testing that is not available to the average reasonable consumer.

52.     The production process Pret A Manger uses for the Products, including what would account for the presence of glyphosate, is known to Pret A Manger and its suppliers but has not

been disclosed to Plaintiffs, or to consumers in New York.

53.     To this day, Pret A Manger continues to conceal and suppress the true nature, identity, source, and method of production of the Products.

54.     Pret A Manger's concealment tolls applicable statute of limitations.

55.     Upon information and belief, Pret A Manger has failed to remedy the problems with the Products and their marketing, thus causing future harm to consumers, as well as real, immediate, and continuing harm.

56.     Pret A Manger has failed to provide adequate relief to members of the state of New York consuming public as of the date of filing this Complaint.

57.     Plaintiffs contend that the Products were sold pursuant to deceptive, unfair, and unlawful trade practices because the sale of the Products offends public policy and is immoral, unethical, oppressive, unscrupulous, and caused substantial economic injuries to consumers.

58.     Plaintiffs seek declaratory relief in the form of an order declaring Pret A Manger's conduct to be unlawful, as well as injunctive relief putting an end to Pret A Manger's deceptive and unfair business practices, including clear and full disclosure of the presence of glyphosate in the Products and/or a reformulation of the Products so that the Products no longer contain glyphosate.

### Regulators Have Already Concluded That
### Pret A Manger's Claims About Using Only "Natural" Ingredients Are Misleading.

59.     In April 2018, the Advertising Standards Authority ("ASA"), the United Kingdom's independent regulator of advertising, censured Pret A Manger for claiming that its sandwiches use "natural" ingredients.[3]

---

[3] Advertising Standards Authority, "ASA Ruling On Pret A Manger (Europe) Ltd" (Apr. 18, 2018), https://www.asa.org.uk/rulings/pret-a-manger--europe--ltd-a16-367959.html.

COMPLAINT

60.     The ASA concluded that advertisements on Pret A Manger's Facebook page and website ("Advertisements"), which included the promise that Pret A Manger made "proper sandwiches avoiding the obscure chemicals, additives and preservatives" used by other fast-food chains and talked about "good, natural food," were misleading.

61.     The ASA said consumers understood "natural" to mean foods made with ingredients straight from nature. "It is misleading to use the term to describe foods or ingredients that employ chemicals," ASA said in its ruling.[4]

62.     In response to allegations made during the ASA's inquiry, Pret A Manger "confirmed that their sandwich bread contained three E-numbers: E472e (diacetyl tartaric acid esters of mono and diglycerides), E471 (mono and diglycerides of fatty acids) and E300 (ascorbic acid)."[5]

63.     The ASA concluded that "because [the Advertisements] contained some claims that Pret A Manger's food was 'natural' when some products contained artificial additives, those claims were misleading[.]"[6]

64.     The ASA ordered that the Advertisements should not appear again. "We told Pret a Manger to ensure their ads did not claim or imply that their food was 'natural', unless their products and ingredients were in line with consumer expectations of the term."[7]

65.     Thus, Pret A Manger is aware of the importance of ensuring that its ingredients and products match the "natural" representations with which it markets them.

## CLASS ALLEGATIONS

66.     Plaintiffs re-allege and incorporate by reference the allegations set forth in each of

---

[4] *Id.*
[5] *Id.*
[6] *Id.*
[7] *Id.*

the preceding paragraphs of this Complaint.

67.      This action is maintainable as a class action under Rules 23(b)(2) and (3) of the Federal Rules of Civil Procedure.

68.      The class definition(s) may depend on the information obtained throughout discovery. Notwithstanding, at this time, Plaintiffs bring this action and seek certification of the claims and certain issues in this action on behalf of a Class of individuals defined as:

> All persons who purchased Pret A Manger's Products (as defined herein) within the United States from the beginning of any applicable limitations period through the date of class certification (the "National Class Period").

69.      Additionally, Plaintiffs bring this action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of themselves and all other similarly situated New York residents (the "New York Sub-Class"), defined as follows:

> All persons who purchased Pret A Manger's Products (as defined herein) within the State of New York from the beginning of any applicable limitations period through the date of class certification (the "New York Class Period").

70.      Excluded from the Class and the New York Sub-Class are (1) Defendants, any entity or division in which Defendants have a controlling interest, and their legal representatives, officers, directors, assigns, and successors; and (2) the judge to whom this case is assigned and the judge's staff.

71.      Plaintiffs bring the Class and the New York Sub-Class pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(1), 23(b)(2), and 23(b)(3).

72.      Plaintiffs reserve the right to amend the Class definitions if further information and discovery indicate that the Class definitions should be narrowed, expanded, or otherwise modified.

73.      All members of the Class and New York Sub-Class were and are similarly affected

by the deceptive advertising of Pret A Manger's Products, and the relief sought herein is for the benefit of Plaintiffs and members of the Class and New York Sub-Class.

**A.      Numerosity**

74.      At this time, Plaintiffs do not know the exact number of the Class and New York Sub-Class members. Based on the annual sales and popularity of Pret A Manger's Products, it is readily apparent that the number of consumers in the Class and New York Sub-Class is so large as to make joinder impracticable, if not impossible. Class and New York Sub-Class Members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. Mail, electronic mail, Internet postings, and/or published notice.

**B.      Commonality**

75.      There is a well-defined community of interest in the questions of law and fact involved in this case. Questions of law and fact common to the members of the Class and New York Sub-Class that predominate over questions that may affect individual Class and New York Sub-Class members include:

(a)      Whether Pret A Manger's practices and representations related to the marketing, labeling and sales of its Products were unfair, deceptive, fraudulent, and/or unlawful in any respect, thereby violating New York law;

(b)      Whether Pret A Manger breached a warranty created through the labeling and marketing of its Products;

(c)      Whether Pret A Manger's conduct as set forth above economically injured Plaintiff sand New York Sub-Class Members; and

(d)      Whether Plaintiffs and New York Sub-Class Members are entitled to injunctive relief.

**C.      Typicality**

76.      Plaintiffs' claims are typical of those of the Class and New York Sub-Class, as the claims arise from the same course of conduct by Defendants, and the relief sought within the Class

and New York Sub-Class is common to the Class and New York Sub-Class members. Plaintiffs, like all members of the Class and New York Sub-Class, relied on Defendants' false and misleading representations and purchased Pret A Manger's Products, or paid more for Pret A Manger's Products than they would have paid if the products had been properly labeled, and sustained injury from Defendants' wrongful conduct. Further, there are no defenses available to Defendants that are unique to Plaintiffs.

**D.     Adequacy**

77.     Plaintiffs will fairly and adequately protect the interests of the Class and New York Sub-Class. Plaintiffs are an adequate representative of the Class and New York Sub-Class because their interests do not conflict with the interests of the Class and New York Sub-Class members they seek to represent, and they have retained counsel competent and experienced in both consumer protection and class action litigation. Plaintiffs and their counsel will fairly and adequately protect the interests of the members of the Class and New York Sub-Class. Undersigned counsel has represented consumers in a variety of actions where they have sought to protect consumers from fraudulent and deceptive practices.

**E.     Predominance and Superiority of Class Action**

78.     The prerequisites to maintaining a class action pursuant to Federal Rule of Civil Procedure 23(b)(3) are met because questions of law and fact common to each Class and New York Sub-Class Member predominate over any questions affecting only individual members, and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

79.     Individual joinder of the Class and New York Sub-Class Members is not practicable, and questions of law and fact common to the Class and New York Sub-Class

predominate over any questions affecting only individual Class and New York Sub-Class Members. Each Class and New York Sub-Class Member has been damaged and is entitled to recovery as a result of the violations alleged herein.

80.     Moreover, because the damages suffered by individual members of the Class and New York Sub-Class may be relatively small, the expense and burden of individual litigation would make it difficult or impossible for individual Class and New York Sub-Class Members to redress the wrongs done to them, while an important public interest will be served by addressing the matter as a class action. Class action treatment will allow those persons similarly situated to litigate their claims in the manner that is most efficient and economical for the parties and the judicial system.

81.     Plaintiffs are unaware of any difficulties in managing this case that should preclude class action.

**F.      Declaratory and Injunctive Relief**

82.     Certification also is appropriate under Rule 23(b)(2) because Defendants acted, or refused to act, on grounds generally applicable to the Class and New York Sub-Class, thereby making appropriate the injunctive relief sought on behalf of the Class and New York Sub-Class. Further, given the large number of consumers of Pret A Manger's Product, allowing individual actions to proceed in lieu of a class action would run the risk of yielding inconsistent and conflicting adjudications.

**CAUSES OF ACTION**

**COUNT I**

**Violation of New York General Business Law § 349: Mislabeling**
**(On Behalf of the New York Sub-Class)**

83.     Plaintiffs re-allege all foregoing paragraphs as if fully set forth herein.

84.     The actions of Pret A Manger, as described above, and each of them, constitute unlawful, deceptive, and fraudulent business acts and practices.

85.     Pret A Manger has labeled its Products as "natural" when in fact the Products contain glyphosate, an unnatural biocide.

86.     Pret A Manger has violated, and continues to violate, § 349 of the New York General Business Law, which makes deceptive acts and practices unlawful. As a direct and proximate result of Pret A Manger's violation of § 349, Plaintiff and other members of the New York Sub-Class have suffered damages in an amount to be determined at trial.

87.     Defendant's improper consumer-oriented conduct—including labeling and advertising the Products as being "natural"—is misleading in a material way in that it, *inter alia*, induced Plaintiff and the New York Sub-Class Members to purchase and pay a premium for Defendants' Products when they otherwise would not have. Defendants made their untrue and/or misleading statements and representations willfully, wantonly, and with reckless disregard for the truth.

88.     Plaintiffs and the New York Sub-Class Members have been injured inasmuch as they paid a premium for products that were—contrary to Defendants' representations—not "natural." Accordingly, Plaintiffs and the New York Sub-Class Members received less than what they bargained and/or paid for.

89.     Defendants' advertising and Products' packaging and labeling induced the Plaintiffs and the New York Sub-Class Members to buy Defendants' Products and to pay a premium price for them.

90.     As a direct and proximate result of Defendant's violation of § 349, Plaintiff and other members of the New York Sub-Class paid a premium price for Defendants' falsely

advertised Products and, as such, have suffered damages in an amount to be determined at trial.

91.     In addition, Plaintiffs seek an order of this Court that includes, but is not limited to, enjoining Pret A Manger from continuing to engage in unlawful, unfair, or fraudulent business practices or any other act prohibited by law.

92.     Plaintiffs and the other members of the New York Sub-Class may be irreparably harmed and/or denied an effective and complete remedy if such an order is not granted.

93.     The unfair and deceptive acts and practices of Pret A Manger, as described above, present a serious threat to Plaintiffs and the other members of the New York Sub-Class.

94.     THEREFORE, Plaintiffs pray for relief as set forth below.

## <u>COUNT II</u>

### Violation of the New York General Business Law § 350
### (On Behalf of the New York Sub-Class)

95.     Plaintiffs re-allege all foregoing paragraphs as if fully set forth herein.

96.     The acts of Pret A Manger, as described above, and each of them, constitute unlawful, deceptive, and fraudulent business acts and practices.

97.     New York General Business Law § 350 provides: "False advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state is hereby declared unlawful."

98.     GBL § 350-a defines "false advertising," in relevant part, as "advertising, including labeling, of a commodity . . . if such advertising is misleading in a material respect."

99.     Plaintiffs and the members of the New York Sub-Class are consumers who purchased Pret A Manger's Products in New York.

100.    As sellers of goods to the consuming public, Pret A Manger is engaged in the conduct of business, trade, or commerce within the intended ambit of GBL § 350.

101.   Pret A Manger's representations made by statement, word, design, device, sound, or any combination thereof, and also the extent to which Pret A Manger's advertising fails to reveal material facts with respect to its Products, as described above, constitute false advertising in violation of the New York General Business Law.

102.   Pret A Manger's false advertising was knowing and intentional.

103.   Pret A Manger's actions led to direct, foreseeable, and proximate injury to Plaintiffs and the New York Sub-Class.

104.   As a consequence of Pret A Manger's deceptive marketing scheme, Plaintiffs and the other members of the New York Sub-Class suffered an ascertainable loss, insofar as they would not have purchased Pret A Manger's Products had the truth been known, or would have purchased Pret A Manger's Products on different terms or would otherwise purchase a competing product, and paid a premium price for Pret A Manger's falsely advertised Products, and as a result of Pret A Manger's conduct, they received a product of less value than what they paid for.

105.   By reason of the foregoing, Pret A Manger is liable to Plaintiffs and the other members of the New York Sub-Class for actual damages or five hundred dollars ($500) for each sale of Pret A Manger's Product (whichever is greater), injunctive relief, attorneys' fees, and the costs of this suit.

106.   Plaintiffs and the other members of the New York Sub-Class further seek to enjoin the false advertising described above.

107.   Absent injunctive relief, Pret A Manger will continue to deceptively market its Products.

108.   THEREFORE, Plaintiffs pray for relief as set forth below.

## COUNT III

**Based on Breach of Express Warranty**
**(On Behalf of the Class and New York Sub-Class)**

109.  Plaintiffs re-allege all foregoing paragraphs as if fully set forth herein.

110.  Pret A Manger provided Plaintiffs and other members of the Class and New York Sub-Class with written express warranties including, but not limited to, warranties that its Products are "natural."

111.  These affirmations of fact or promises by Pret A Manger relate to the goods and became part of the basis of the bargain.

112.  Plaintiffs and members of the Class and New York Sub-Class purchased Pret A Manger's Product believing them to conform to the express warranties.

113.  Pret A Manger breached these warranties. This breach resulted in damages to Plaintiffs and other members of the Class and New York Sub-Class, who bought Pret A Manger's Products but did not receive the goods as warranted.

114.  As a proximate result of the breach of warranties by Pret A Manger, Plaintiffs and the other members of the Class and New York Sub-Class did not receive goods as warranted. Plaintiffs and the members of the Class and New York Sub-Class therefore have been injured and have suffered damages in an amount to be proven at trial.

115.  Among other things, Plaintiffs and members of the Class and New York Sub-Class did not receive the benefit of the bargain and have suffered other injuries as detailed above. Moreover, had Plaintiffs and the Class and New York Sub-Class members known the true facts, they would not have purchased Pret A Manger's Products, or would have purchased Pret A Manger's Products on different terms.

116.  THEREFORE, Plaintiffs pray for relief as set forth below.

## COUNT IV

### Unjust Enrichment
### (On Behalf of the Class and New York Sub-Class)

117. Plaintiffs re-allege all foregoing paragraphs as if fully set forth herein.

118. As a result of Pret A Manger's deceptive, fraudulent, and misleading labeling, advertising, marketing, and sales of its Products, Pret A Manger was enriched at the expense of Plaintiffs and the other members of the Class and New York Sub-Class through the payment of the purchase price, or for the payment of a price higher than otherwise would have been paid, for Pret A Manger's Products.

119. Under the circumstances, it would be against equity and good conscience to permit Pret A Manger to retain the ill-gotten benefits that it received from Plaintiffs and the other members of the Class and New York Sub-Class, in light of the fact that the Products purchased by Plaintiffs and the other members of the Class and New York Sub-Class were not what Pret A Manger purported them to be. Thus, it would be unjust or inequitable for Pret A Manger to retain the benefit without restitution to Plaintiffs and the other members of the Class and New York Sub-Class for the monies paid to Pret A Manger for Pret A Manger's Products.

120. To the extent required by law, this cause of action is pleaded in the alternative to Plaintiffs' contract-based claims.

121. THEREFORE, Plaintiffs pray for relief as set forth below.

### PRAYER FOR RELIEF

122. WHEREFORE, Plaintiffs demand judgment on behalf of themselves and the proposed Class and New York Sub-Class providing such relief as follows:

A.      Certification of the Class and New York Sub-Class proposed herein under Federal Rule of Civil Procedure 23(a), (b)(1), (b)(2), and (b)(3); appointment of Plaintiffs Samara Daly and Linda Virtue as representatives of the Class and New York Sub-Class; and appointment of his undersigned counsel as counsel for the Class and New York Sub-Class;

B.      A declaration that Pret A Manger is financially responsible for notifying members of the Class and New York Sub-Class of the pendency of this suit;

C.      An order requiring an accounting for, and imposition of a constructive trust upon, all monies received by Pret A Manger as a result of the unfair, misleading, fraudulent, and unlawful conduct alleged herein;

D.      Restitution, disgorgement, refund, and/or other monetary damages, together with costs and disbursements, including reasonable attorneys' fees pursuant to the applicable statutes and prejudgment interest at the maximum rate allowable by law;

E.      Injunctive relief pursuant to New York General Business Law § 349 and common law, enjoining Pret A Manger's unlawful and deceptive acts;

F.      Injunctive relief and statutory or actual damages pursuant to New York General Business Law § 350;

G.      Punitive damages in accordance with proof and in an amount consistent with applicable precedent; and

H.      Such further relief as this Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiffs hereby demand a trial by jury.

DATED: September 24, 2018

RICHMAN LAW GROUP

Kim E. Richman
Richman Law Group
81 Prospect Street
Brooklyn, NY 11201
Telephone: (212) 687-8291
Facsimile: (212) 687-8292
krichman@richmanlawgroup.com

*Attorneys for Plaintiff*